UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TRACEY LOCKWOOD and FRANK LOCKWOOD, HER HUSBAND | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 10-3547 |
| v. | : | |
| NATIONSTAR MORTGAGE, LLC and FEDERAL NATIONAL MORTGAGE ASSOC., | : | **OPINION** |
| | : | |
| Defendants. | : | |

      Plaintiffs Tracey Lockwood and Frank Lockwood are husband and wife and co-owners of a home in Browns Mill, New Jersey.  Compl. ¶ 1.  They have defaulted on their mortgage and Defendants NationStar Mortgage and Federal National Mortgage Association[1] instituted foreclosure proceedings in New Jersey Superior Court, Burlington County, Chancery Division.  Plaintiffs filed the present action against Defendants alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C.A. § 1601, et seq., and seeking rescission of the mortgage and statutory damages.  Presently before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Plaintiffs' cross-motion for a Stay of the foreclosure proceedings.

---

[1] There is some debate as to the current holder of the Mortgage.  There is a state action pending in which the Lockwoods moved to strike Nationstar on lack of standing, because they contend that Federal National Mortgage ("Fanny Mae") is the holder of the loan. Fanny Mae is not a party to the foreclosure action at this time.

The Court has considered the written submissions of the parties and heard oral argument on these matters on the record on March 2, 2011. For the reasons stated on the record that day, as well as those that follow, the Court will deny the motion to dismiss and stay the present federal action pending resolution of the foreclosure action in the New Jersey Superior Court.

## I. BACKGROUND

Plaintiffs refinanced their mortgage with Defendants in early 2008. They have since rescinded their mortgage but Defendants have not honored the rescission. Plaintiffs allege that Defendants violated TILA by providing inaccurate, backdated versions of the mandatory Notices of Right to Cancel ("NORTCs") and by failing to honor their notice of rescission.

The Lockwoods began the process of refinancing their Browns Mill, New Jersey home in late 2007 with Nationstar. Compl. at ¶¶ 13-15. A closing date was set for January 8, 2008, but during this meeting the Lockwoods refused to sign the loan documents because the terms were inconsistent with earlier representations of Nationstar. Id. at ¶¶ 16-20. Importantly, the Lockwoods contend that a *female* agent of Nationstar attended the January 8, 2008 meeting and that the closing did not take place on that date. Id.

On January 10, 2008, a *male* agent for Nationstar went to the Lockwoods' home with revised loan documents, including a revised HUD-1, dated January 10, 2008 that reflected the agreed upon terms of the loan. See Compl., Ex. A HUD-1 form. The male agent for Nationstar directed the Lockwoods to leave the spaces for the date blank. The Lockwoods obliged and as a result claim that they signed the Truth In Lending

Disclosure Statement and the NORTC without acknowledging the date of their signatures on those forms. See Compl. at ¶¶ 21-27. The Lockwoods expressly dispute signing any documents on January 8, 2008, including the Mortgage. Id. at ¶¶ 18-20.

If the Lockwoods are believed, and considering the print date of some of the documents brought to the January 10, 2008 meeting, it is possible that the Defendants backdated the documents. See Compl., Ex. A HUD-1 form, dated January 10, 2008. The upshot is a reduction in the three day cancellation period provided under TILA and Regulation Z. Because the documents were dated for January 8, 2008, rather than January 10, 2008, the Lockwoods only had until January 11, 2008 to exercise their right to cancel, when they should have had until January 14, 2008. Id. at ¶ 31. Defendants also disbursed the proceeds of the loan before midnight on January 14, 2008; before the three business day cancellation period expired under the Lockwoods' theory. Id. at ¶ 34.

On April 19, 2008, Tracey Lockwood was in a serious car accident. She subsequently lost her job and the Lockwoods fell behind on their mortgage payments. See Cert. of Andrew Milz, Esq., Ex. A. In October of 2009, Defendants sued the Lockwoods in foreclosure in the New Jersey Superior Court, Burlington County, Chancery Division ("the foreclosure action"). In that case, the Lockwoods plead as an affirmative defense all defenses available under TILA. Defendants moved to strike the Lockwoods' Answer and the parties briefed the issues. Then, the Lockwoods sent a rescission letter to Defendants, but the rescission was denied. Compl. at ¶ 41.

Following a denial of their request to rescind, the Lockwoods instituted the present action in this Court. In the meantime, the state court denied Nationstar's motion to strike the Answer. The parties debate whether the state court analyzed or

even addressed the Lockwoods' TILA affirmative defense. The Lockwoods claim that there has been no discovery in state court related to their TILA affirmative defense, largely because at the time that it plead the affirmative defense, the basis for the federal TILA action had not accrued because Defendants had not yet denied rescission. As of the date of the hearing in this matter, no trial date has been set in the foreclosure action.

Both parties have asked for a stay. Defendants ask for a stay of these proceedings in the event the Court denies the motion to dismiss. Plaintiffs not only oppose the motion to dismiss, but also ask for the Court to Stay the foreclosure action in state court. These issues will be addressed in turn.

## II. STANDARD OF REVIEW

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[2] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808,

---

[2] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). Here, the Mortgage is not attached to Plaintiffs' Complaint, nor is it referenced. Defendants contend that the Court must still consider the Mortgage on a motion to dismiss because it is a public document that is the subject of the litigation and is attached to the opposition brief. "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 129 S.

---

[3] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id.

Ct. at 1950 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

There are two Counts in the Complaint. Count I alleges a violation of TILA predicated upon Defendants' alleged failure to: (1) deliver proper NOTRCs, in violation of Regulation Z, § 226.23 (b) (2), and (2) honor the notice of rescission. Compl. ¶¶ 43-4. Count II seeks monetary damages pursuant to 15 U.S.C. § 1640 (a) (2) (A). Id., ¶¶ 45-7. The gravamen of Plaintiffs' claim is that the "cancel by date" on the NOTRC was skewed because they did not sign the NORTC until January 10, 2008. As a result, they

allege that the NORTCs were defective because they were not clear and conspicuous.[4] Plaintiffs also claim that Defendants prematurely disbursed their loan before the three day cancellation period expired.

TILA was enacted "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . and to protect the consumer against inaccurate and unfair" practices. 15 U.S.C. § 1601; Rossman v. Fleet Bank (R.I.) N.A., 280 F.3d 384, 390 (3d Cir. 2002). It is a remedial statute and is to be liberally construed in favor of borrowers. Smith v. Fidelity Discount Co., 898 F.2d 896, 899 (3d Cir. 1990) (citing Bizier v. Globe Financial Services, 654 F.2d 1, 3 (1st Cir. 1981)). TILA requires strict liability in favor of the consumers when mandated disclosures have not been made. 15 U.S.C. § 1640(a); see also Thomka v. A.Z. Chevrolet Inc., 619 F.2d 246, 249-50 (3d Cir. 1980) (the creditor's intent and nature of violation are immaterial). "[O]nce the court finds a [TILA] violation, no matter how technical, it has no discretion with respect to liability." Grant v. Imperial Motors, 539 F.2d 506, 510 (5th Cir. 1976).

TILA requires that the borrower be provided with two copies of a properly filled out NORTCs. 12 C.F.R. § 226.23(a), (b). TILA also provides borrowers with three days to rescind, commonly referred to as the cancellation period. 15 U.S.C.A. §§ 1635(a), (f); 12 C.F.R. § 226.23(a)(3) (1991). Importantly, the cancellation period is extended to three years when a lender fails to provide the borrower with a clear and conspicuous disclosure of rescission rights. Id. One example is the failure to identify the transaction

---

[4] Plaintiffs agree that any claim related to the fact that the finance charge was overstated by $239.00 must be dismissed.

and "clearly and conspicuously disclose [, *inter alia*,] … the date that the rescission period expires." 12 C.F.R. § 226.23 (b) (1) (v). In addition, a TILA violation occurs where a creditor disburses monies, performs services, and/or delivers materials before the rescission period has expired. 12 C.F.R. § 226.23 (c).

      On a motion to dismiss the reasonable inferences must be drawn in favor of the Plaintiffs. Given that the Plaintiffs allege, with some specificity, that two different agents came to their home on two different dates and that at least one of the documents has a print date different from the notarized date, it is possible (even considering the notarized mortgage) that some or all of the closing documents were backdated. As a result, Plaintiffs state a claim for a violation of TILA, as the loan monies could have been prematurely disbursed before the expiration of the cancellation period. See Taylor v. Domestic Remodeling, 97 F.3d 96, 98-99 (5th Cir. 1996) (three-year term of 15 U.S.C. § 1635(f) in which to rescind applied where jury found that the notice of right to rescind was misdated and that performance was premature). Thus, Plaintiffs properly allege a violation of TILA. Regulation Z, 12 C.F.R. §§ 226.23(a), (b) (2).

      Plaintiffs also state a claim pursuant to 15 U.S.C. § 1640 (a), for Defendants' failure to honor their timely rescission notice. If the NOTRCs are defective, as Plaintiffs allege, then the right to rescind was extended to three years. 12 C.F.R. § 226.23(a)(3). Plaintiffs rescission request would be timely under these circumstances and Defendants' failure to honor that request is actionable pursuant to 15 U.S.C. § 1640 (a).

      Defendants claim that the reasonable inference from Plaintiffs' allegation of two closing dates is that the Settlement Statement was amended on January 10, but the other closing documents were signed and notarized on January 8, 2008. Defendants

8

further allege that the fact that the Settlement Statement was amended on January 10, 2008 to exclude certain finance charges did not require them to provide Plaintiffs with new loan documents or new TILA disclosures; especially since the documents were amended to reflect a more favorable finance charge for the Plaintiffs. Defendants are free to make these arguments at the summary judgment stage. As plead, Plaintiffs' Complaint alleges a cause of action under TILA and Defendants' motion to dismiss must be denied.

### IV. MOTION AND CROSS-MOTION FOR STAY

Both parties petition the Court for a Stay. Plaintiffs move to enjoin the foreclosure proceedings and Defendants move to stay the present case pending the outcome of the foreclosure case. For the following reasons, the Court will not enjoin the foreclosure proceedings and will stay the present matter until the foreclosure proceedings resolve.

The decision of whether to preliminary enjoin the foreclosure action is informed by four factors: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." American Civil Liberties Union of New Jersey v. Black Horse Pike Regional Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996) (citations omitted); see also Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997).

The first, third and fourth factors do not influence the Court to any significant degree in its consideration of enjoining the Chancery Court foreclosure action. Plaintiffs'

success in this action comes down to credibility. The probability of success on the merits is, consequently, difficult to quantify. Plaintiffs will have the same probability of success in either forum. The harm to Defendants is *de minimus*, as the validity of the rescission notice will be evaluated whether the claim proceeds here or in the foreclosure proceedings. Thus, there is little harm to the Defendants, because it must defend Plaintiffs allegations in both actions. Finally, public policy concerns do not weigh heavily on either side.

However, the second factor strongly weighs against issuing an injunction because Plaintiffs have not demonstrated that they will suffer irreparable harm. Plaintiffs argument that in lieu of an injunction they will lose their house discounts a critical element of the foreclosure proceedings. Plaintiffs' TILA claim will be addressed in the foreclosure action during the evaluation of the forecloseability of the mortgage. In order to succeed on the foreclosure action, Nationstar must establish three elements: (1) the validity of the loan documents (the note and mortgage); (2) the alleged default in payment; and (3) the right to foreclose. Great Falls Bank v. Pardo, 263 N.J.Super. 388, 394, 622 A.2d 1353 (Ch. Div. 1993). Because Plaintiffs raise their present federal TILA claim as an affirmative defense to foreclosure, the Chancery Court must address the same issue present before this Court: whether the Lockwoods properly exercised their right to rescind the mortgage. If the Chancery Court recognizes the Lockwoods' rescission of the mortgage, their mortgage is deemed invalid, precluding foreclosure. 15 U.S.C.A. § 1635(b) ("When an obligor exercises his right to rescind ... any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission.").

Moreover, Plaintiffs will be entitled to rescission damages in the foreclosure action. "Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests." McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421-22 (3d Cir. 2007). Thus, Plaintiffs will not be irreparably injured; if they are successful in defending the foreclosure action they can proceed with their statutory damages claim in federal court. For these reasons the Court will not exercise its power to enjoin the foreclosure proceeding.

Instead, the Court will stay the present matter pending resolution of the foreclosure case. Whether to stay a pending case is within the Court's sound discretion. Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir. 1998); Motson v. Franklin Covery Co., 2005 WL 3465664 (D.N.J. Dec.16, 2005). Three factors inform the decision to stay a case: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and the trial of the case; and (3) whether discovery is complete and a trial date has been set." Xerox Corp. v. 3Com Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999).

It does not appear that Plaintiffs will be unduly prejudiced by the imposition of a stay, because their rights under TILA will be considered in the foreclosure action. Plaintiffs' contention that staying the present matter deprives them of their choice of forum is unpersuasive. In addition, resolution of the foreclosure action will simplify and/or completely resolve the issues before this Court. Finally, given the progression of the foreclosure action, it appears that the matter is ripe for trial. For all of these reasons the Court will stay the present action pending resolution of the foreclosure proceedings.

## V. CONCLUSION

For the reasons stated on the record during the hearing on March 2, 2011 and those set forth in this Opinion, Defendants' Motion to Dismiss is denied, Defendants' Motion for a Stay is granted, and Plaintiffs' Cross-Motion for a Stay is denied. An appropriate Order shall issue.


Date: March 8, 2011


       /s/ Joseph H. Rodriguez
       Honorable Joseph H. Rodriguez,
       UNITED STATES DISTRICT JUDGE